### PAYNE v. YONKERS ELECTRIC LIGHT & POWER CO.

(Supreme Court, Appellate Division, Second Department. December 21, 1911.)

CONTRACTS (§ 16*)—OFFER AND ACCEPTANCE.

    Plaintiff, on application for electric service, met defendant's agents, authorized to receive but not to accept applications, who assured him that he could expect the power within 10 days, and advised him to get his premises ready, but the application signed by plaintiff provided "that this agreement shall not be binding upon the company until accepted by it through its proper executive officer, and shall not be modified or affected by any promise, agreement or representation of any agent or employé of the company, unless incorporated in writing herein before such acceptance," and that the company should not be required to supply power under the agreement until a reasonable time after the necessary permits were granted. This agreement was not executed by defendant, which failed to get a permit and could not furnish the service. Held, in an action for damages for alleged breach of agreement, that, as there had been no acceptance of the application according to its terms, plaintiff could not recover.

    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 71–93; Dec. Dig. § 16.*]

Appeal from Westchester County Court.

Action by Joseph Payne against the Yonkers Electric Light & Power Company. From a judgment of the County Court for plaintiff, defendant appeals. Reversed, and new trial ordered.

Argued before JENKS, P. J., and BURR, THOMAS, WOODWARD, and RICH, JJ.

Thomas H. Beardsley, for appellant.
Arthur C. Blatz, for respondent.

THOMAS, J. The plaintiff has recovered damages for breach of an alleged agreement with defendant that the latter would furnish wires and electrical power for operating machinery installed in reliance upon such agreement in premises rented by the plaintiff. Plaintiff on June 3, 1909, made an application for service, meeting for that purpose at defendant's office Fuller and Kugler, inspectors and agents of defendant, authorized to receive and to transmit but not to accept applications. The plaintiff testified that Kugler stated to him, in ref-

erence to the time of furnishing the service, "that he was going to try his best, as quick as possible"; that both men told him that he could expect the power in 10 days, and advised him "to get ready with his motor any day." And there was some corroboration of this by other witnesses. It further appears that, before making the application, plaintiff asked Sezen, his landlord, to go to the defendant, and later received from him letters from the defendant, to which reference will again be made. Later, and after the application, plaintiff states that he several times saw Fuller and Kugler, and that they encouraged him by saying that they were working on the line, and that he was going to get his power; but in July they told him that they could not supply the power, as they could not "get permission from the property owners to set the poles." The plaintiff began the installation of his machinery about June 1st, which was before the date of the application. The plaintiff, under objection and exception, was allowed on the question of damages to show rent paid, and expenditures for work, material for fitting his shop, expenses for removing machinery, and loss of profit on an order for goods.

From this history it appears that Fuller and Kugler received the application, and at the time and later advised the plaintiff that he would get the power within a time stated, and encouraged the plaintiff to equip his factory. The exhibits should be considered in connection with this evidence. On May 26th the defendant's vice president, in evident reply to a communication from him, advised Sezen as to the kind of motor that should be used, and on May 28th again wrote Sezen as follows:

"We wrote you a few days ago concerning the kind and type of motor to be used. We have looked into the matter of service connection and find that you are somewhat distant from our mains. We have taken up the matter of an extension and the possibility of bringing our mains to your premises, but from present indications it seems that we may experience a long delay.. We are advising you of these conditions and have instructed our Mr. Kugler to keep you posted as to the progress and as to when the mains may possibly reach your premises."

On July 26th the vice president wrote Blatz, plaintiff's attorney, of the impediments to rendering the service, and expressed willingness to provide the service if the obstacles could be removed. It is beyond question that the defendant could not supply the service, as it was powerless to extend its line the necessary distance without the unobtainable consent of the property owners. The application, dated June 3, 1909, and witnessed by Kugler, contains the following:

"This agreement shall not be binding upon the company until accepted by it through its proper executive officer, and shall not be modified or affected by any promise, agreement or representation by any agent or employé of the company, unless incorporated in writing herein before such acceptance."

It is not executed by an officer of the company. As a part of the application is a proposed agreement, which, among other things, provided:

"(7) The company shall make, or cause to be made, application for any necessary street permits, and shall not be required to supply current under this agreement until a reasonable time after such permits are granted."

At the same time, the plaintiff signed a formal agreement witnessed by Kugler, and unexecuted by defendant, which contained a provision similar to that first quoted from the application. The application was not accepted according to its terms, and no agreement was executed by defendant. The plaintiff knew the terms of the instruments. He relied upon the alleged oral statement by Kugler or Fuller, or both. Yet he knew that the defendant could not be so bound, inasmuch as he had stipulated that the agreement should not be binding until accepted by an executive officer, and that there should not be any modification of it by an agent or employé of the company "unless incorporated in writing herein before such acceptance." But he did rely, as he says, on what he considered the assurances of Kugler and Fuller, and on that predicates his cause of action. Plaintiff knew that the permit for service could not be granted until the line was established, and that this could not be until the line had been built with the consents of the property owners. On May 28th the company's vice president wrote Sezen that the matter of extension had been taken up, that "from present indications it seems that we may experience a long delay," and that Mr. Kugler had been instructed "to keep you posted as to the progress and as to when the mains may possibly reach your premises," but this did not undo the terms of the application made thereafter, when the plaintiff bound himself by the stipulations stated. The defendant acted in entire good faith, but could not furnish the service, and the plaintiff knew that it was not obliged to do so until it bound itself by the agreement.

The judgment and order should be reversed, and a new trial ordered; costs to abide the event. All concur.